JP:TK

**M-08-355**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

　　- against -

Tom Oye

　　　　　Defendant.

- - - - - - - - - - - - - - - - -X

C O M P L A I N T

(T. 21, U.S.C. § 846)

EASTERN DISTRICT OF NEW YORK, SS:

　　Joseph Magilton, being duly sworn, deposes and says that he is a Special Agent with United States Immigration and Customs Enforcement ("ICE"), duly appointed according to law and acting as such.

　　Upon information and belief, on or about and between March 24th, 2008 and April 9, 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant TOM OYE, together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute a substance containing heroin, a Schedule I controlled substance, in violation of Title 21 U.S.C. § 841(a)(1).

　　(Title 21, United States Code, Section 846).

　　The source of your deponent's information and the

grounds for his belief are as follows:[1]

1. On or about March 24, 2008 United States Customs and Border Protection Inspectors at the New York Air Courier Clearance facility located at JFK International Airport in Queens, New York conducted a routine package interdiction. During the course of the interdiction the Inspectors found a package with a label indicting that it was sent from Lexy Moore in Bhat Wadi, Bombay, India and addressed Nathaniel Djanie, 2654 Marion Avenue Apt. 1FN, Bronx, NY 10458 . Upon further investigation the package contained a photo album that had a white, powdery substance, which field-tested positive for heroin. The approximate gross weight of the heroin seized from the package was 420 grams. CBP inspectors then contacted ICE Special Agents about the package.

2. On or about March 27, 2008 ICE special agents went to the address listed on the package label. They were provided access to the premises by a cooperating witness ("CW"). The CW then gave oral and written permission to them to search the apartment. During the interview, the CW, among other things, stated that he expected a package to arrive that week from India containing heroin and that he expected to be paid for accepting the package. ICE Special agents then placed CW under arrest and advised him of his Miranda rights, which he then both waived

---

[1] Because the purpose of this affidavit is merely to establish probable cause, I have not set forth all of the facts and circumstances of which I am aware.

orally and in writing.

3. Subsequent to the reading of his Miranda warnings, the CW stated, in sum and substance, that he was recruited by an individual named "Ahmed" in the Bronx to receive packages containing heroin. CW stated that the package in question was not the first one he received for "Ahmed" and that he had received one the prior week. CW stated that the prior package was picked up from his house by "Ahmed" and an individual named "Tom" (later identified as the defendant TOM OYE). CW stated that for this particular package, the one intercepted by Customs Agents, he was to call "Ahmed" upon receiving it and wait for him to pick it up. Moreover, CW stated that he was supposed to be paid somewhere between $400 and $1,000 for receiving the package.

4. Beginning on March 27, 2008 "Ahmed" continuously called CW's home phone demanding to know the whereabouts of both CW and the package. On April 8, 2008 "Ahmed" called CW's cellular phone and reached him and told CW that the package would be retrieved the next day. On April 9, 2008, at approximately 1:15 p.m., CW made a consensually monitored call to "Ahmed," and left "Ahmed" a message saying the package was available for pick-up. When "Ahmed" did not call back CW made another consensually monitored call, at approximately 6:08 p.m., this time to "Tom". When he reached "Tom", later identified as the defendant TOM OYE, CW stated, among other things, that he could not reach "Ahmed" but that the package was nevertheless ready for pick-up. The

defendant TOM OYE stated that he would pass along the message to "Ahmed" and that the pick-up would likely take place the next day.

5. Just ten minutes later, at approximately 6:20 p.m. the defendant TOM OYE called CW back again, and on this consensually monitored call told CW that he would meet him shortly at 34th Street and 3rd Avenue in Manhattan to pick-up the package. The defendant TOM OYE told CW he would pay him $1,000 at that time.

6. At approximately 7:45 p.m. CW was waiting with ICE Agents with the package. The heroin inside the package was replaced with a substance having the approximate weight of the heroin originally inside the package. When the defendant TOM OYE appeared in his 2001 Mercedes ML 320 at 7:50, the CW entered the vehicle with the package and ICE Agents stopped the car immediately and placed the defendant TOM OYE under arrest. On the driver's side door, in plain-view, in one of the storage compartment's was cash totaling $900

7. Following his arrest, the defendant TOM OYE was given and waived his Miranda warnings. The defendant then stated, in sum and substance, that he knew the package that he came to pick up contained heroin. He further stated that he works with "Ahmed" and the two of them import drugs from India and pass the drugs along to contacts from other U.S. cities. He also stated that the heroin formerly was shipped directly to "Ahmed",

however, out of caution, the last two packages were instead sent to CW who was paid to hold them until such time as they could be retrieved by either "Ahmed" or himself.

WHEREFORE, your deponent respectfully requests that the defendants TOM OYE be dealt with according to law.

_____
Joseph Magilton,
Special Agent
U.S. Bureau of Immigration and Customs Enforcement

Sworn to before me this
10th day of April, 2008

_____
UN                    ATE JUDGE
EA                    EW YORK